**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GIL KOVAR, | : | |
| Plaintiff, | : : : | |
| v. | : : | CIVIL ACTION NO. 1:07-CV-2839-JOF |
| CSX TRANSPORTATION, INC., | : : | |
| Defendant. | : | |

## OPINION AND ORDER

This matter is before the court on Defendant's motion for summary judgment [33]; Plaintiff's motion for summary judgment [36]; and Plaintiff's amended motion for summary judgment [38].

**I.    Background**

**A.    Procedural History and Facts**

Plaintiff, Gil Kovar, filed suit against Defendant CSX Transportation, Inc., on October 9, 2007, in the Superior Court of Fulton County alleging breach of contract. Defendant removed the suit to this court on November 15, 2007. Plaintiff avers generally

that CSX breached its contract with him when it improperly caused his stock options to lapse after he was discharged. The parties filed cross-motions for summary judgment.[1]

Plaintiff was hired by Conrail, the predecessor to CSX, in September 1973. During his time with Conrail and CSX, Plaintiff moved up the management ranks eventually becoming the Regional Vice President of the Northeast Region in 2002. The CSX Omnibus Incentive Plan became effective on April 27, 2000. Although an earlier incentive plan was in place, none of the stock options granted under that plan is at issue here. Plaintiff received three Notices of Non-Qualified Stock Option Grants under the 2000 Omnibus Incentive Plan. Each of these Notices separated the granted options into three vesting periods. The options in these Notices were scheduled to vest on various dates "subject to the terms of the Plan" between May 17, 2004, and May 7, 2008. The stock options may only be exercised once they have been granted. The terms of the 2000 Incentive Plan are governed by the laws of the Commonwealth of Virginia.

In 2003, during a company reorganization, Plaintiff was asked to transfer to Atlanta, Georgia to become General Manager of the Atlanta division. Plaintiff remained in this position for two years. On March 17, 2005, however, Defendant's Chief Operating Officer

---

[1]Plaintiff filed an initial motion for summary judgment but could not attach exhibits to that motion. Plaintiff, therefore, filed an amended motion for summary judgment, the text of which is identical to the original but which simply adds the exhibits. For the purposes of clarity, the court DENIES AS MOOT Plaintiff's original motion for summary judgment [36] and considers the amended motion only.

informed Plaintiff that his employment (along with several other executives') was going to be terminated. On April 4, 2005, in exchange for a severance package, Plaintiff executed a Separation Agreement pursuant to which all of Plaintiff's stock options were to be treated in accordance with the terms of the 2000 Incentive Plan and Grant Notices. At the time of Plaintiff's discharge, 25,166 of his options under the Plan had not yet vested. Plaintiff's termination was entered into Defendant's PeopleSoft Human Resources system which automatically sent notification to Merrill Lynch. Based on Plaintiff's termination, the Merrill Lynch system lapsed Plaintiff's unvested options.

Under the terms of the Incentive Plan, Plaintiff did have thirty days after his termination to exercise any options that had already vested. During this time period, Plaintiff did exercise his vested options that were "in the money" and allowed the ones "not in the money" to lapse.

### B. Contentions

Plaintiff contends that Defendant had a duty to Plaintiff to deliver shares of stock to Plaintiff upon Plaintiff's exercise of the stock options and that Defendant breached this duty by cancelling Plaintiff's unvested options. Plaintiff relies on the terms of the Employment Requirements and Exercisability to support his argument. Plaintiff further argues that if the court finds the contract ambiguous, then it should be construed against the drafter. Because the Grant Notice contains no statement as to whether Defendant has the right to cancel

3

unvested options at the time of termination, the court should interpret this against the drafter and presume that the Plan did not intend to cancel the unvested options.[2]

Defendant responds that Plaintiff cannot establish a prima facie case of breach of contract because the contract's vesting schedule was contingent upon continued employment. Defendant argues that the purpose of the Incentive Plan as stated in the Plan documents is to encourage continued employment and that purpose can only be served if options vest only when an individual is employed. As a result, any options that were not vested at the time of Plaintiff's termination lapsed.

## II.  Discussion

The Stock Option Grant[3] contains two sections:

**Vesting**:
The Options may be exercised only when vested. Subject to the terms of the Plan, the Options vested according to the following schedule:

[actual dates omitted]

In the case of a Change in Control, the Options will become fully vested immediately. In the event of your Retirement, Disability or death, the Options will become vested at the dates listed above as if you had continued employment. Additionally, the Options will vest on the dates listed above as

---

[2] At one point in the litigation, Plaintiff apparently asserted that his unvested options were treated differently than those of other employees who had been terminated. He no longer pursues that theory.

[3] The stock option notices are issued under the terms of the 2000 Omnibus Incentive Plan. The operative language is contained in the Grant Notices, and the court refers interchangeably to the 2000 Omnibus Incentive Plan and the Grant Notices.

4

if you had continued employment if (i) your employer is involved in a Divisive Transaction, or (ii) your employment is terminated, with the consent of the Company, as a result of a business transaction, a reduction in force or any other circumstances approved by the Compensation Committee.

**Employment Requirements and Exercisability**
If you separate from employment for any reason other than Retirement, Disability or death, you will have 30 days after your separation from employment to exercise any Options that are vested on your separation from employment. If your employment is terminated for Cause, however, all of your rights under the Options shall be null and void.

In the event of your separation from employment due to Disability or death, you or your Beneficiary or estate will have five years (but not later than the expiration date) to exercise any vested Options. Beneficiary designation forms may be obtained upon request from the CSX Corporation Secretary's Office. If your separation from employment is because of Retirement, you will have until the expiration date to exercise any vested Options. If your employer is involved in a Divisive Transaction or your employment is terminated with the consent of the Company as a result of a business transaction, a reduction in force, or any other circumstances approved by the Compensation Committee, you will have until the later of three years from the event of one year from the applicable date of vesting to exercise the Options.

*See* Defendant's Exh. 2.

As an initial matter, the court agrees with Defendant that Plaintiff's focus on the "Employment Requirements and Exercisability" language of the Grant Notice is misplaced in the instant dispute. Plaintiff's lawsuit alleges that Defendant improperly caused his ***unvested stock options to lapse*** after his termination. That is, the dispute relates only to unvested stock options and ***not*** to the exercise of options that had already vested. In fact, Plaintiff admits that he used the thirty-day window provided to exercise options that had

5

already vested. Vesting is clearly a condition precedent to exercising options. Thus, the court focuses its interpretation of the Omnibus Incentive Plan and Grant Notices on the "vesting" provisions.

The parties agree that Plaintiff's separation from CSX did not meet any of the conditions stated in the Incentive Plan that provided for a continuation of vesting after separation from employment. The parties also agree that Plaintiff was not eligible to retire, nor was his termination a part of a business restructuring or a reduction in force. Thus, Plaintiff's departure from the company does not fit into any of the categories outlined in the Incentive Plan documents on "vesting." Essentially, the problem here is that the "Vesting" portion of the Grant Notice does not specify that "absent one of these exceptions, vesting is contingent upon continued employment."

The elements of breach of contract under Virginia law are "(1) a legal obligation of a defendant to the plaintiff; (2) a violation or a breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Aviation Resources, Inc. v. XL Speciality Ins. Co.*, 276 F. Supp. 2d 567, 568 (W.D. Va. 2003). Virginia follows general common law of contracts:

> Contracts between parties are subject to basic rules of interpretation. Contracts are construed as written, without adding terms that were not included by the parties. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. Furthermore, the contract must be considered as

6

> a whole without giving emphasis to isolated terms. Finally, no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract.

*татм Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 263 Va. 116, 119 (2002) (quotations and citations omitted).

Furthermore,

> where a contract is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. Courts must be justly prudent and careful in inferring covenants or promises, lest they make the contract speak where it was intended to be silent, or make it speak contrary to what, as may be gathered from the whole terms and tenor of the contract, was the intention of the parties. However, what is necessarily implied is as much a part of the instrument as if plainly expressed, and will be enforced as such.

*Litman v. Toll Bros., Inc.*, 263 Fed. Appx. 269 (4th Cir. 2008) (per curiam) (quotations and citations omitted); *see also Pellegrin v. Pellegrin*, 31 Va. App. 753, 759 (2000). Finally, "[p]arties are not presumed to have included a provision of no effect." *Hughes & Co. v. Robinson Corp.*, 211 Va. 4, 7 (1970).

The court finds no ambiguity in the language of the contract. *Compare Cascades North Venture Limited Partnership v. PRC, Inc.*, 249 Va. 574 (1995) ("ambiguity exists when language is of doubtful import, admits of being understood in more than one way, admits of two or more meanings, or refers to two or more things at the same time"), *with Cave Hill Corp. v. Hiers*, 264 Va. 640, 645 (2002) (even inartfully drawn contract "not

7

rendered ambiguous merely because the parties or their attorneys disagree upon the meaning of the language employed to express the agreement"). The fact that the contract does not explicitly state vesting is contingent upon continued employment does not render the contract ambiguous but does require the court to apply rules of construction to interpret the contract.

While the Vesting section does not explicitly state that vesting is contingent upon continued employment, this is the only logical way to interpret the Grant Notice provisions. Generally, stock options vest only during employment. The Grant Notice contains five exceptions where continued employment would not be necessary for further vesting: (1) retirement, (2) disability, (3) death, (4) Divisive Transaction, or (5) termination as a result of business transaction or reduction in force. The listing of exceptions to the general requirement of continued employment that are spelled out in the Grant Notice would be superfluous but for the default position of options needing to vest during employment. In particular, the Grant Notice's repeated use of the phrase "as if you had continued employment" would not be necessary were it not required that an individual be employed for options to vest.

Further, the terms of the Incentive Plan, themselves, demonstrate the importance of continued employment. *See* Plaintiff's Depo., Exh. 4 (the purpose of options under the Plan is that "[t]he Board of Directors believes that such awards will provide incentives for

employees to remain with CSX, will encourage continued work of superior quality and will further the identification of the employees' interests with those of CSX's shareholders.").[4]

Finally, there would be no reason to include a limitation on the time period to exercise already vested options (thirty days), if Plaintiff could continue to vest in options after the termination of his employment.[5]

The court finds, therefore, that the necessity of continued employment for the vesting of options is so "necessarily implied" that it is part of the contract itself. Because continued employment is a requirement for the vesting of options, Defendant did not breach any duty to Plaintiff when Plaintiff's unvested options lapsed upon the termination of his employment. For these reasons, the court GRANTS Defendant's motion for summary judgment [33] and DENIES Plaintiff's amended motion for summary judgment [38].

---

[4] Plaintiff attempts to dispute this purpose by pointing to his own testimony that giving stock options also rewards employees for past performance. Plaintiff's speculation, however, cannot dispute the purpose of the Incentive Plan as it is stated in the Plan documents themselves.

[5] The court finds *Lucius v. Micro General Corp.*, 2004 WL 1598813 (N.D. Ga. 2004) (Thrash, J.), cited by Plaintiff, to be distinguishable. In *Lucius*, the option documents gave no indication as to what would happen when an employee was terminated, and the court ultimately determined that the Plan Administrator had discretion under the terms of the Plan to exercise his authority to terminate the plaintiff's stock options. Summary judgment was denied because there was a fact dispute as to whether the Administrator did exercise that authority.

**III. Conclusion**

The court GRANTS Defendant's motion for summary judgment [33]; DENIES AS MOOT Plaintiff's motion for summary judgment [36]; and DENIES Plaintiff's amended motion for summary judgment [38].

The Clerk of the Court is DIRECTED to DISMISS Plaintiff's complaint.

**IT IS SO ORDERED** this 3rd day of February 2009.

s/ J. Owen Forrester<br>
J. OWEN FORRESTER<br>
SENIOR UNITED STATES DISTRICT JUDGE

10